69 U.S. 97
 17 L.Ed. 855
 2 Wall. 97
 DAY
v.
GALLUP.
 December Term, 1864
 
 THE 25th section of the Judiciary Act provides that a final judgment in the highest court of law of a State, in which is drawn in question the validity of an 'authority exercised under the United States,' and the decision is against its validity, may be reviewed in this court. With this act in force, Gallup sued Derby & Day, Gear, and Allis, in a State court of Minnesota, in trespass, for taking and carrying away goods. On the 1st April, 1860, the defendants justified under certain writs of attachment and execution, issued out of the Federal court for Minnesota, in a certain suit therein pending, wherein Derby & Day were plaintiffs, and one Griggs defendant. In this suit judgment had been given 10th September, 1859, execution issued on the next day, and returned satisfied on the 19th. The justification set up that Allis was attorney of Derby & Day, and Gear, marshal of the United States; that the taking was by Gear as United States marshal, under and by virtue of the writs, and at the request of Derby & Day. The debt from Griggs to Derby & Day, the affidavits and order on which the attachment and the judgment on which the execution were issued, were also pleaded by the defendants below, and that the property was the property of Griggs. The plaintiff below replied, denying that the property was the property of Griggs, but not denying the character of the defendants, or that the taking was under Federal process.
 Gallup's suit against Derby & Day, Allis, and the marshal, was brought to trial June 18th, 1860; but, before the swearing of a jury, was discontinued as to the marshal.
 On trial of it against the remaining defendants, Derby & Day, and Allis, it was not contended by the plaintiff that any of these parties were guilty of any but a constructive taking; that is to say, of more than having authorized the marshal to seize under his process; and before the defendants had offered any evidence, and before there had been any proof of a suit pending in the Federal court, or of an attachment issued out of such court, or that the said goods had been taken under process, the defendants' counsel moved, on the part of the defendants, Derby & Day, and Allis, and also for each of them separately, to dismiss the case, on the ground that there was nothing in the evidence which showed that they, or either of them, had had anything to do with the act of Gear, the marshal, in taking the goods; a defence set up by Allis in his answer as to other defendants than the marshal, and as was said in the motion, not denied in the reply. This the court refused to do; the defendants excepting. The defendants then called the clerk of the Federal court, and gave in evidence the substance of the attachment suit of Derby & Day against Griggs; showing, or endeavoring to show, that the goods attached had originally been their goods; that Griggs had bought them on credit, and that the alleged sale by him to Gallup was a fraud; that the goods were in fact still the property of Griggs. They offered in evidence, also, the simple writ of attachment, which, under exception, the court refused to let go before the jury, unless the affidavit on which it was founded was also produced. Verdict was, however, given against Derby & Day, and Allis, the attorney, though afterwards set aside as to this last. Judgment having been entered against Derby & Day, the case was taken by writ of error to the Supreme Court of Minnesota, in which it was affirmed; and it was now before this court on writ of error, the question being whether there had been drawn in question, in that Supreme Court of Minnesota, any authority exercised under the United States.
 Mr. Peckham for the plaintiff in error: The justification of the defendants below of the alleged trespass was under a writ of attachment issued out of the United States District Court. Here, then, is a valid defence under the authority of a United States court and marshal admitted on the record, and which the State court must have overruled, in order to have rendered the judgment they did. The proceeding is in Minnesota, and, of course, under its code. When a fact is stated in a pleading under the code of Minnesota, which constitutes of itself a defence, the intent to rely on it as such is a necessary inference.[1]
 And the court is bound to give judgment according to the pleadings, without any demurrer being interposed. A judgment entered upon a trial in the face of an admission by the pleadings, showing that there ought to be no such judgment, would be erroneous.[2]
 Now, under the case of Crowell v. Randall,[3] this case, by necessary intendment, that the question must have been raised and was decided. Aside, too, from its being raised by the pleadings, it was raised, although unnecessarily, on the trial. For the defendants below objected, and excepted to being obliged to produce in evidence more than the simple writ of attachment, thus claiming that the simple taking under United States process was in itself a defence, and without producing the affidavits, &c., on which it was founded, which would, of course, be necessary to sustain a defence founded only on fraud.
 It is true that Derby & Day were not asserted to be guilty otherwise than constructively; that is to say, as being plaintiffs in the suit, and as having directed the levy and received the benefits. But it is certain that if the act is justified in or by the actual doer, it must be justified by the constructive one also. The case is the same as if the proceeding were against the marshal alone.
 Now, it is settled by Freeman v. Howe, in this court,[4] that, as between State and United States courts, whenever an action has been commenced in one of them, the court in which it is commenced has exclusive jurisdiction over any 'res' that may be in controversy, and over any 'question' that may arise in any stage of the litigation, whether immediate or ancillary. In this case, for example, that the question whether the marshal was a trespasser or not, involves a question of right and title to the property under the Federal process, which it belongs to the Federal and not State courts to determine; that is, to say it again, and in other words, that in the State courts (and vice vers where the State court first commences the action) the property must be regarded as in the possession of the marshal as marshal, or in the custody of the law. The case, in fact, decides that as the question 'of title to the property under the Federal process' can only be 'determined' in the Federal courts, it is incumbent on the State courts to leave that question to them, and that in the State courts the marshal can never be held as a trespasser where he has, in good faith, under process, levied on goods as the property of the defendant in the writ; the whenever the marshal would have a right to seize goods on the allegation or claim that they belonged to the defendant in his writ, his acts in such cases, in the State courts, must be regarded as official; and the question as to whom the goods did belong can be litigated only in the courts of the United States.
 The principle was, in fact, illustrated in the early case of Slocum v. Mayberry.[5] 'If,' says Marshall, C. J., in that case, 'if the officer has a right, under the laws of the United States, to seize for a supposed forfeiture, the question, whether that forfeiture has been actually incurred, belongs exclusively to the Federal courts, and cannot be drawn to another forum. And if the seizure be finally adjudged wrongful, and without reasonable cause, he may proceed, at his election, by a suit at common law, or in the Admiralty, for damages for the illegal act.'
 In Freeman v. Howe, it was held, that the case did 'involve a question of right and title to the property under the Federal process, which belonged to the Federal, and not State courts, to determine.'
 In this case there was no possession of the res by the marshal as marshal, unless on the assumption of the exclusive authority of the Federal court to decide the question of title. If Gallup desired to bring his action of trespass in the State court, the proper way for him to have done, was first to have litigated the naked right of property in the Federal court. If successful in that, he then could have brought his action either of trespass or replevin. Such a course would not have been new. It was successfully pursued in Gelston v. Hoyt.[6] In that case, the question of forfeiture was first litigated in the Federal court, and decided in favor of the claimant. The claimant then brought trespass in the State court, and recovered.
 Mr. J. H. Bradley, contra: The State court, it will be conceded by the other side, had either exclusive or concurrent jurisdiction both of the parties and the subject-matter, unless that jurisdiction is concluded by the fact that the property was taken under process issued by the Federal court. Now, the title to the property had not been called in question in that court, and there had been no decision respecting it. The return of the execution, in that case, was dated 19th September, 1859; the complaint filed 26th September, 1859. The Federal court, therefore, at the time this suit was brought, had no possession of or control over the parties or the subject-matter. The case between Derby & Day v. Griggs, in the Federal court, had been decided; the money made on the execution, and the debt satisfied.
 It is supposed the jurisdiction of the State court was concluded, by the fact that the alleged trespass was committed by the marshal in execution of process; and these parties assisting him, their liability will depend on his; and as at that time the Federal court had jurisdiction, this action could not be brought in the State court. The case of Freeman v. Howe is relied on. The principle on which that case rests, and which is the basis of all preceding cases in this court on that point, is that when the possession or control of person or property has been taken by a Federal court, in the exercise of its jurisdiction, it will retain that possession and control to the conclusion of the case. It follows, that all questions touching the rightfulness of such possession are to be decided by it. This court, in the case cited, has suggested the remedies for persons claiming such property, and not already parties to the suit. But neither the reasons given by the court, in the decision of those causes, or any one of them, nor the judgments themselves, can be read to exclude the State courts from providing remedies for injuries received by individuals from acts of the officers of the Federal court done colore officii, especially after the case between the parties in the Federal court is at an end, and the rights of the parties so injured have not been drawn in question and decided in the Federal court.
 If the person or property is taken under an attachment, or under a proceeding in rem, the retention of possession is necessary to the due exercise of the jurisdiction of the Federal court; if it is taken under an execution, the process is returnable into that court, and that court claims the exclusive right to determine all the questions in the cause.
 If an action had been brought by Gallup in the Federal court against these plaintiffs, it cannot be doubted or denied that he might have maintained it pending the suit between them and Griggs in that court. Or he might have resorted to one of the remedies suggested in Freeman v. Howe, to raise the question of the right of property. The first, because they were citizens of different States; the last, because that court had the custody and control of the property in dispute in another suit, between other parties. This last reason fails when that litigation is ended; and Gallup's rights, postponed as to the forum pending that suit, revive when the property is no longer in the custody or control of the Federal court, and his right to it has not been called in question and decided in that court. The result is, that the jurisdiction of the State court is suspended while the property is held in the custody of the law; it revives as soon as that custody ceases. If this be so, there is no error in the record from the State court.
 But if this be not so, still the remedy by the action of trespass or case may be proceeded with, even while the property taken by the marshal is in the custody of the Federal court. It is unimportant where the property is. Even if it has been destroyed, this action may be prosecuted. The suits are between different parties, for different causes of action. The validity of the process of the Federal court is in nowise called in question; its exclusive jurisdiction over the parties and the subject-matter in controversy between them, is not interrupted; its process, from the impetration of the writ to the satisfaction of the judgment, is unimpaired. If these actions could be brought and maintained in that court, between proper parties, leaving the custody of the property where it was first put by the law, so here the State court, having concurrent jurisdiction, must be allowed to proceed with it, leaving the property still in the custody of the law. It never has been said by this court, that a State court has no jurisdiction to inquire into trespasses, vi et armis, committed by marshals under a pretence of process. The tests are: Is the subject-matter of the two suits the same? Can both suits be carried on without a conflict of authority between the two courts? If so, they may well be prosecuted in the two forums at the same time. If not, then the court which first obtained jurisdiction of the parties and the subject-matter will retain it to the end.[7]
 In the Federal court, a party is pursuing his remedy to recover a debt. That is the subject-matter of the suit. As part of the process in that suit, property is taken, and is to be held in the custody of the law until that cause is finally disposed of, unless that court shall in the meanwhile order it to be released. It will not tolerate the interference of any other court with property so situated.
 In the State court having concurrent jurisdiction with the Federal court, the action is brought, not to recover possession of the property thus held in the custody of the law in the Federal court, but to recover damages for the unlawful taking. The cause of action, or subject-matter of this suit, is the injury sustained by the party from whom that property was taken under color of process. The process may be omni exceptione major; and yet the taking under the color of that process may be a trespass. Either court may have, and must have, the power to decide this last question without infringing on the jurisdiction of the other. The property is in the custody of the law, to enable that court to decide, not the right of property, but the demand in that suit. No question as to the authority of the Federal court to issue the process is involved, directly or indirectly. If it shall appear that the property was subject to that process, the marshal is justified. The process is good; but that does not afford protection to him for taking the property of another, for abusing the process. He is not sued qua marshal, but as trespasser. He sets up his defence qua marshal, and it fails, and that is a question which a State court is competent to try, equally with a Federal court.
 Mr. Justice WAYNE delivered the opinion of the court.
 
 
 1
 The dates in this case show that at the time Gallup's suit was brought there was no case pending in the Federal court, respecting the goods which had been attached under that court's process, on attachment. On the 18th of June, 1860, before a jury was sworn in the case, it was dismissed as to Gear, the marshal. On that day a jury was sworn, and on the 20th of the month they returned a verdict for Gallup, with interest and costs. In fact, it becomes plain that the defendants did not then consider that there was any necessary connection between Gallup's complaint and themselves on account of the seizure and sale of the former's goods under the process of the Federal court; for on the trial of the cause, before any proof had been given that there had been a suit in the Federal court from which an attachment had been issued, or that the goods of Gallup had been seized and sold under its process, and after the defendants had examined witnesses and Gallup had rested his case upon that testimony, the defendants moved to dismiss Gallup's complaint as to all of them conjointly, and for each of them separately, on the ground that the defence of Allis in his answer was not denied in the reply as to the defendants, Derby & Day and Allis, or on the part of them separately, and because there was no evidence to connect them with the taking of the goods. The motion was refused; the defendants excepting to the decision of it. And then the defendants introduced as a witness the clerk of the Federal court; and he, to use the language of the record, proved substantially the suit in the Federal court of Derby & Day against Griggs, and the defendants regarded the sale by Griggs to Gallup as fraudulent. In no part of the record does it appear that the authority of Gear, as marshal, to take the goods, was drawn in question. Nor is it to be inferred from any pleading by the defendants. The facts are, that, from the return of the execution satisfied, the Federal court had no control over the parties. The case between the plaintiffs in error against Griggs had been decided, the money made on the execution, and the debt paid.
 
 
 2
 Upon the facts of the case, as they appear in the record, we have determined that no one of the questions described in the 28th section of the Judiciary Act necessarily arose or was decided by the Supreme Court of Minnesota. We think it unnecessary to particularize such decided questions as will give jurisdiction to this court under that act. We therefore dismiss the writ of error to the Supreme Court of Minnesota.
 
 
 3
 DISMISSAL ACCORDINGLY.
 
 
 
 [1]
 Bridge v. Payson, 5 Sandford, N. Y. 210. The code of New York and of Minnesota being substantially the same, the decisions of New York are considered as applying.
 
 
 [2]
 Id. p. 217. See, also, Van Valen v. Lapham, 13 Howard's New York Practice Reports 246.
 
 
 [3]
 10 Peters, 368.
 
 
 [4]
 24 Howard, 457.
 
 
 [5]
 2 Wheaton, 1.
 
 
 [6]
 3 Id. 246.
 
 
 [7]
 Smith v. McIver, 9 Wheaton, 532; Shelby v. Bacon, 10 Howard, 56.